UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

APRIL G. YERGER,

    Plaintiff,

v.                                                    Case No. 8:11-cv-1944-T-30TBM

MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits and Supplemental Security Income payments. She urges that the Administrative Law Judge erred in rejecting the mental residual functional capacity assessment of a nurse practitioner which found Plaintiff so mentally limited as to preclude employment. Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

A.

Plaintiff was forty-seven (47) years of age at the time of her administrative hearing. She stands 4' 8" tall and weighs 112 pounds. Plaintiff has a high school diploma and two years of college. Her past relevant work was in catering, product manufacturing, and as a

singer. Plaintiff applied for disability benefits and for Supplemental Security Income in December 2007, alleging disability as of August 1, 2007, by reason of bipolar disorder and hepatitis C. Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff next received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ") in January 2010. The Plaintiff was represented at the hearing by counsel and testified in her own behalf.

In essence, Plaintiff claims she cannot work due to her mental health. She receives therapy at "Suncoast" for post-traumatic stress disorder.[1] She was raped long ago and suffers from anxiety and panic attacks. She experiences hyperventilation, headaches, ringing in her ears, and nervousness. These last for thirty seconds to ten minutes, and occurs four or five times a month. She also has mood swings. Her bipolar disorder leaves her more manic than depressed. She has uncontrollable laughter and a short temper. She cannot concentrate; starts tasks, but cannot finish them; and has racing thoughts. She occasionally does risky foolish things that she is unable to stop. As an example, she cites walking on a car and breaking her ankle. She takes medications, Lamictal and Invega, but they do not seem to work. She has intruding thoughts or feelings that she is not adequate, and she has had some paranoia during the last year.

Plaintiff was fired from her last job where she answered phones for an auction. She interrupted callers, took orders wrong, and could not enter the orders properly. She works well in catering, but did not think she could do that anymore. She is now unable to lift over

---

[1] Suncoast is a mental health facility formally known as Suncoast Center for Community Mental Health, Inc.

fifty pounds after breaking her ankle.  In a recent effort to do catering work at the Tropicana Field, she became frustrated because she was shuffled around too much.  In her opinion, even a sit-down job would be difficult because she is unable to concentrate.

Plaintiff acknowledged three prior DUI's and past usage of cocaine and marijuana.  She no longer has a driver's license.  She lives with her mother and has two children.  She attends AA meetings twice a week and one class a week at her church, where she also sings in the choir and is taking classes to be a chaplain.   (R. 34-62).

The ALJ next took testimony from Irvin Roth, Ph.D., a vocational expert (VE).  On a hypothetical assuming a person of Plaintiff's age, education and work experience capable of light exertional work with limitations for occasional postural activities, no work on ladders, ropes or scaffolds, or work around unprotected heights or with hazardous machinery, with the capacity to remember, follow, and carry-out work-like procedures and instructions at a simple, routine, repetitive type work and relate well with others and adjust well, the VE opined that such person could not do Plaintiff's past work which was skilled or semi-skilled work, but could do other type of work such as cashier, fast food worker, and small parts assembler.  With an additional limitation for sit-stand option, the number of available cashier and assembler jobs would be reduced.  There would be other jobs such as inspectors and packers which would be available.  Should psychological problems prevent such person to perform tasks in a timely manner with consistent pace, no work would be available.  (R. 62-68).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary. Plaintiff's date last insured for disability benefits was December 31, 2008.

By his decision of February 9, 2010, the ALJ determined that while Plaintiff has severe impairments related to bipolar disorder, cocaine and marijuana dependence, in early full remission, hepatitis C, renal cyst, status post right ankle fracture, she nonetheless had the residual functional capacity to perform a restricted range of light exertional work. Upon this finding and testimony from the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 17-26). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

B.

To prevail on a claim for Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards

were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

The Plaintiff argues that the ALJ erred in deciding her mental residual functional capacity (RFC). More particularly, the ALJ erred in rejecting the psychiatric impairment questionnaire completed by a nurse practitioner and signed by Dr. Linda Leffler, which essentially found Plaintiff disabled by reason of marked limitations in activities of daily living and extreme limitations in maintaining social functioning, and with frequent deficiencies of concentration and continual episodes of deterioration. *See* (R. 552-54). She urges that the ALJ failed to state adequate good cause for discounting this doctor's opinion. (Doc. 15 at 10-15).

In response, the Commissioner argues first that the opinions of Mr. Brooks, a nurse practitioner, are not those from an acceptable medical source and thus not entitled to any deference. *See* 20 C.F.R. ¶¶ 404.1513, 404.1527(a)(2), 416.913, 416.927(a)(2). While Dr. Leffler signed the form, there is no evidence that she treated Plaintiff. To the contrary, the records at Suncoast indicate all of Plaintiff's care was by a therapist or nurse practitioner. Even assuming the opinions were those of a treating medical source, the opinions were properly discounted because such were inconsistent with the substantial medical and other evidence of record including Plaintiff's own testimony. Finally, the substantial evidence supports the decision that Plaintiff was not disabled. (Doc. 18 at 4-9).

The opinion evidence in question is set forth in a Psychiatric Impairment Questionnaire form completed in December 2009 by Aaron Brooks, ARNP, with the

6

assistance of Peter Picuri, Plaintiff's "therapist." (R. 552-54). The form bears Mr. Brooks's signature and that of "L. Leffler Supervising MD." (R. 554). By this assessment, Plaintiff suffers marked limitations in activities of daily living; extreme limitations in maintaining social functioning; frequent limitations in concentration, persistence or pace; and continual episodes of deterioration or decompensation in work or work-like settings. Applying the treating doctor standard to these opinions, Plaintiff urges that the opinions are entitled to great weight unless adequately discounted by the ALJ. Here, she urges that each of the reasons relied upon by the ALJ are inadequate.

Essentially, for the reasons set forth by the Commissioner, I find no error requiring remand. After full review of the Suncoast medical records, I find first that the opinions offered were not those of a treating doctor. And, in any event, the ALJ has adequately discounted them based on the record as a whole.

As the decision reflects, the ALJ discounted the opinions of Mr. Brooks on the following rationale,

> I considered the psychiatric impairment questionnaire dated December 22, 2009 signed by Aaron Brooks, ARNP, and this opinion has been afforded little weight. Mr. Brooks opines that the claimant is markedly limited in restriction of activities of daily living and extremely limited in maintaining social functioning. Mr. Brooks further opines that the claimant would be absent from work more than twice a month due to her impairments. This ARNP's assessments seem to be based on the claimant's self-serving subjective complaints and not on objective examinations. I must not give credence to Mr. Brooks' opinion as his opinion is inconsistent with other substantial evidence, including the claimant's own testimony at the hearing.
>
> Of import, treating physicians have consistently documented that the claimant was alert, cooperative and oriented. Mr. Brooks indicated that he is assisted in answering the questions by Peter Picuri, a therapist.

7

> This opinion has been considered but not given controlling weight because the limitations are not provided by acceptable medical sources (Exhibit 20F). The claimant's mental health record reflects improvement with treatment. In addition, the claimant has never sought or received treatment from a psychiatrist or psychologist; all treatment has been rendered by a nurse practitioner. The claimant was alert and aware of everything that went on at the hearing. She understood and answered all questions appropriately.

(R. 23-24).

Initially, I note that the regulations prescribe that evidence of impairments must come from "acceptable medical sources," defined therein to include licensed physicians or osteopathic doctors and licensed or certified psychologist, among other professionals. 20 C.F.R. §§ 404.1513(a), 416.913(a). This designation is significant. As noted in SSR 06-3p, the designation as an acceptable medical source is necessary because only such sources can establish a medically determinable impairment and give medical opinions under this regulatory scheme. SSR 06-03p, 71 Fed. Reg. 45593 (Aug. 9, 2006).[2] Additionally, in this Circuit, when considering a treating physician's opinions, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). However, neither nurse practitioners nor therapists are "acceptable medical sources" under the regulations, nor may they claim to be treating physicians. 20 C.F.R. §§ 404.1513(d), 416.913(d). Moreover, their opinions are not entitled

---

[2]Social Security Rulings are agency rulings issued to clarify regulations and policy and are binding on all components of the Administration. *Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990). Such rulings are not binding on this Court; however, they are accorded deference. *See Fair v. Shalala*, 37 F.3d 1466, 1469 (11th Cir. 1994); *B.B. ex. rel. A. L. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981).

to any particular deference, although they are appropriate for consideration along with all the evidence in making the disability decision. 20 C.F.R. §§ 404.1513(d), 416.913(d).

Here, I find that the opinions at issue are those of an ARNP and a therapist, neither of whom is an acceptable medical source whose opinion is entitled to any particular deference. Further, the good cause standard cited by Plaintiff is wholly inapplicable.[3] While the questionnaire bears the signature of L. Leffler, M.D., as a supervising doctor, it is apparent that the form was completed by Mr. Brooks and the opinions therein are his and Mr. Picuri's. Significantly, a review of the Suncoast records does not reveal that Dr. Leffler ever had a treating relationship with Plaintiff such that her opinions should be afforded great weight. *See* (R. 223-71[4]; 376-459; 502-51). Indeed, I can find no other reference to her anywhere in this record. Rather, the record reveals that Plaintiff's care came from either an ARNP or one such as Mr. Picuri, designated as a "therapist." In any event, Plaintiff simply does not demonstrate that Dr. Leffler was a treating doctor or that the treating doctor/good cause standard is the standard applicable in this case. As argued, the claim fails.

---

[3]In this Circuit, when considering a treating physician's opinions, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips*, 357 F.3d at 1240; *Lewis*, 125 F.3d at 1440. Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440. Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

[4]According to Plaintiff's brief, these records are not relevant to the issues in the case.

That said, whether the opinion is from a treating doctor or not, such opinion evidence is appropriately considered along with other evidence in the case. *See* 20 C.F.R. §§ 404.1512-13; 416.912-13; SSR 06-03p. In SSR 06-03p, it is suggested that such opinion evidence is appropriately considered along with other evidence under the considerations listed by the regulations at 20 C.F.R. §§ 404.1527 and 416.927 for weighing acceptable medical opinions. Thus, in weighing such opinions, factors such as how long the source has known the claimant and the frequency of their contact, the consistency of the source's opinions with the other evidence, the degree to which the source supports and explains the opinions, and whether the source has a specialty or area of expertise related to the claimant's impairments along with any other relevant factor is appropriately considered in weighing such opinions. SSR 06-03p. When measured against these considerations, I conclude that the ALJ has adequately stated reasons why the opinions do not deserve controlling weight.

As set forth above, in addition to noting that neither Mr. Brooks nor Mr. Picuri are acceptable medical sources, the ALJ cited the following reasons for discounting these opinions: Mr. Brooks's assessments appeared to be based on the self-serving subjective complaints and not on objective examinations; the opinions were not consistent with the medical record nor with Plaintiff's self-reports and testimony; records indicated that Plaintiff's condition improved with treatment; all of Plaintiff's care was by nurse practitioners and therapists, not by psychologists or psychiatrists; and Plaintiff was alert and responsive at the hearing. When the whole of the record is considered, the ALJ has more than adequately articulated reasons to discount these opinions.

10

Here, the mental health records do not reveal any care by a psychologist or psychiatrist. As for the care at Suncoast, such came solely from ARNPs and "therapists." A review of those records indicates that Mr. Brooks himself had only limited contact with Plaintiff before offering his opinions on disability. By these records, it appears that he saw Plaintiff one time, in November 2009 and perhaps, one time in December 2009, before he completed the questionnaire. (R. 509, 505-07).[5] His report provides little in the way of clinical support for his opinions. In the one report that I could find, Mr. Brooks noted on a mental status exam that Plaintiff's "[a]ppearance kempt. Behavior appropriate. Speech hyperverbal, but not pressured. Eye contact fair. Motor activity appropriate. Thought process organized. Thought content negative for distortions, delusions, obsessions, or phobias. No suicidal or homicidal ideation. No auditory or visual hallucinations are noted. She does have some mild paranoid symptoms that are generalized." (R. 509). While the Suncoast records show Mr. Picuri had numerous conversations with Plaintiff often about scheduling and medication management, and on occasion in the nature of counseling, Mr. Picuri's background and expertise as a "therapist" is unclear. Significantly, his records also offer little clinical insight or support for the opinions for disabling limitations in activities of daily living and maintaining social functioning. Both appear to have relied heavily upon Plaintiff's subjective complaints.

Furthermore, other records do suggest Plaintiff maintained well when she used her medication. *See, e.g.*, (R. 264-65, 389, 391-92, 419, 425, 522, 527, 529). Those records

---

[5]Prior to November 2009, the records indicate that Nancy Wyatt, ARNP was treating Plaintiff. *See* (Exs. 12F, 13F, 19F).

11

related to physical issues and care, which also reflect on Plaintiff's mental state, also support the ALJ's conclusion. *See, e.g.*, (R. 318, 356). Other records related to the rather intensive treatment of her ankle injury give no suggestion of significant mental symptoms or issues. *See* (R. 486-501). While this is not to say that Plaintiff's records did not reveal symptoms or subjective complaints related to her mental state, *see, e.g.*, (R. 326-27; 505, 509, 512), on this record, there was good cause to find that such symptoms were not as persistent or intense as Plaintiff claimed, especially when she took her medications. There was also good cause to discount the rather extreme opinions by Mssrs. Brooks and Picuri on Plaintiff's mental capacity for work.

In sum, I find that the ALJ adequately set forth his rationale for discounting this opinion evidence. After full consideration of the medical record, I find such supported by substantial evidence. The marked limitations in activities of daily living testimony and the extreme limitation in maintaining social functioning is simply not revealed throughout this record and appear significantly refuted by Plaintiff's self-reports and testimony. On the ALJ's assessment of Plaintiff's mental RFC, while Plaintiff was precluded from complex and detailed job tasks, she had the capacity of performing simple, routine, and repetitive job tasks. (R. 24). On a hypothetical question to the VE which is not otherwise challenged on this appeal, the VE identified several unskilled light exertional jobs Plaintiff could perform. Such is sufficient to support the ALJ's vocational decision.

D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the file.

> Respectfully submitted this
> 5th day of November 2012.
>
> THOMAS B. McCOUN III
> UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
The Honorable James S. Moody, Jr., United States District Judge
Counsel of Record